## TRACY vs. YATES.

A stockholder of a manufacturing corporation is not liable, ·under the act of February 17, 1848, for debts of the corporation, contracted before he became a stockholder.

A person who gives to a corporation his promissory note, payable at a future time, for a specified number of shares of its capital stock, and takes a receipt from an officer of the company expressing that such note, when paid, will be in full for such shares, does not become a stockholder, until the note matures and is paid, and a stock certificate is issued.

THIS was an appeal by the defendant from a judgment rendered at a special term, upon the verdict of a jury. The plaintiff, claiming to be a creditor of an alleged corporation called "The New-York Croton and Steam Faucet Manufacturing Company," on certain promissory notes of said company, bearing date from November 28, 1849, to January 14, 1850, recovered a judgment in the New-York common pleas against said company, on the 19th of June, 1850, for $3,239.60, and an execution thereon was returned unsatisfied. He then brought this action against the defendant, claiming that she was a stockholder in said corporation, and was liable to him for the said debt of the corporation, being less in amount than her stock. The corporation was alleged to have been formed in pursuance of the act of February 17th, 1848, by the filing of a certificate, on the 17th of October, 1849. The plaintiff claimed to have shown the defendant to have been a stockholder, by the books of the company; by a note given for stock, by a receipt taken by her upon giving the note, and by the issue of a certificate to her on March 4, 1850. There was no evidence of any subscription to the stock by her. It appeared that there were other debts of the alleged corporation, to a large amount, unpaid, and that there was no property of the company to pay them. The action was tried at the New-York circuit in December, 1851, and came up upon a bill of exceptions to rulings on the trial, and to the charge of the judge.

Tracy *v.* Yates.

*E. H. Owen,* for the appellant.

*S. K. Wightman,* for the plaintiff.

*By the Court,* ROOSEVELT, J. Mrs. Yates is sued as one of the alleged stockholders of an insolvent manufacturing corporation. She denies the allegation that she was a stockholder. The cause was tried at a circuit court held in December, 1851. Under the ruling of the judge, a verdict was rendered for the plaintiff for $3605.61; and a bill of exceptions having been taken by the defendant, the cause is now brought before the general term on appeal. Although a great many points have been raised and argued, the controlling question, it seems to me, and the only one necessary to be disposed of is, was Mrs. Yates, under the circumstances, a stockholder within the meaning of the law, so as to subject her to liability for the debts due from the corporation to the plaintiff? The act of 1848, providing for the voluntary formation of incorporated manufacturing companies,(*a*) declares that any three or more persons, upon filing the proper certificate, duly signed and acknowledged by them, shall become a body corporate. The certificate under which the manufacturing company in question organized itself, was not, and did not purport to be, signed by Mrs. Yates. She was therefore clearly not an original stockholder ; or rather, more properly speaking, not an original corporator. How then, and when, did she become a stockholder? Her stock certificate bears date, and was issued, on the 4th of March, 1850; whereas the notes on which this suit is brought, and the sales in respect of which they were given, are all of a date prior to the 15th of January. The plaintiff nevertheless, in his replication, " avers that the defendant held such stock, and was such stockholder, prior and subsequent to said sales and the giving of said notes." It appears, however, to have been the practice of the company to give receipts at first, instead of the more formal certificates. But the president swears he "never signed a receipt for stock for Mrs.

(*a*) *Laws of* 1848, *p.* 54.

Yates." Still a receipt was given to her, dated October 20, 1849, signed "D. W. Townsend, trustee." No authority in Townsend to bind the company in that manner was shown, and the paper itself merely states that he, Townsend, had received from Mrs. Yates her note, dated October 1, for five months, for $5000; "which, when paid, will be in full for fifty shares of the capital stock of the New-York Croton and Steam Faucet Manufacturing Company." So that even if Townsend had authority—one trustee to bind five—the agreement was to sell prospectively and conditionally. And accordingly no stock certificate was issued to Mrs. Yates until the 4th of March, the day on which the note matured and was paid. It seems to me clear, therefore, that she was not a stockholder, if ever, within the meaning of the statute, until that day; and that the credit given by the plaintiff to the company, being all antecedent, was not founded upon any responsibility, actual or supposed on her part, to pay the debt or any portion of it. On the trial, it was sought to make her a stockholder as early as October 1, 1849, and alleged entries of that date in the company's books were given in evidence for that purpose. It appeared that these entries were not original subscriptions; that they were copied some weeks after the 1st from loose memoranda; and, what is still more decisive, that the company, as a corporation, (a circumstance strangely overlooked at the trial,) had no existence, if ever, until the 18th, when the articles of association were filed in the office of the secretary of state. Assuming, then, that Mrs. Yates, if ever, became a stockholder on and not before the 4th of March, long after the plaintiff's sale to the company, is she, nevertheless, liable in this suit merely because she may have been a stockholder when it was instituted? The statute (§ 10) declares that all the stockholders of every company incorporated under it shall be individually liable for all the debts of the company, to an amount equal to the amount of stock held by them respectively, until the whole capital shall have been paid in, and a certificate to that effect duly recorded. And such payment, on pain of dissolution, is required to be paid, one half in one year, and the residue in two years, from the time of incor-

poration, and in money, and "nothing but money." There would seem to be a manifest equity on the one hand in charging members of the company with "debts contracted by such company," while they were members; and on the other, a manifest inequity in charging those who came in after with debts contracted before. This principle, also, is clearly recognized in the twenty-fourth section of the act, which provides that no suit shall be brought against any stockholder who shall cease to be such, for any debt, unless commenced within two years "from the time he shall have ceased to be a stockholder;" thus showing that a transfer of stock was not to be deemed a transfer of liability; and it will hardly be contended that the transfer, although not discharging the just and proper liability of the transferrer, super-added for the same debt the liability of the transferree. Persons trusting these companies are presumed to do so partly on the faith of the stock, and partly on the faith of the stockholders. And accordingly, the act (§ 25) provides that a book, open at all times to the inspection of creditors, shall be kept by the company, containing the names of all persons who are, or within six years shall have been, stockholders, showing the number of shares of each, the places of their residence, and the times when they became the owners of such shares, and the amount of stock actually paid in. How, then, with such a provision in his favor, could a creditor be presumed to part with his property on the faith of subsequent stockholders, over whose selection he had no control, and whose solvency or insolvency he could by no possibility foresee or even conjecture? And if not, what equity is there in allowing him to sue both those whom he trusted and those whom he did not? In this case, too, there appears to be a peculiar hardship on the defendant. She has not only paid up her shares in full, thus losing her whole $5000, but is now called on to pay $5000 more; and that on account of what she conceives to be, and on the trial offered to prove to be, a mere swindle, contrived by the getters up of the pretended corporation. In my view, as already suggested, there is no equity in this claim, as against her, and no rule of interpretation, which, when fairly applied to the language of the statute as matter of

strict law, can render her liable. The proper persons, if the facts be as the defendant offered to prove, to be sued by the creditors, are the individuals who contrived the fraud and profited by its accomplishment. To them the plaintiff should look. They framed the articles of association, and under their own hands certified and declared to the public that "they had formed the New-York Croton and Steam Faucet Manufacturing Company." And it would be peculiarly fit and proper that they who raised the steam and assumed its control, should bear the consequences, whether designed or not, of the explosion. At all events, in our view, the defendant is not liable. A new trial must therefore be ordered.

[NEW-YORK GENERAL TERM, June 1, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]