Robertson, J.
If some of the positions taken by the defendant’s counsel be correct, it is possible for a Company, created under the General Incorporating Law, (2 R. S., 5th ed., p. 657,) to have all its capital stock paid in and the certificate filed under section 34, (11), and go on and transact all its business, without having a single stockholder within the meaning of that word as contended for. Moreover, it is further contended, that there may be persons having a right to all the earnings of the Company, as stockowners, but who are not stockholders, because their names are not entered on the transfer book as such; in other words, that all the stock of the Company is supposed originally to be its property; that it does not legally become the property of any
one else, until entered in the transfer book, according to the bylaws of the Company, made in pursuance of the power given to them by section 29, (7,) the certificates of stock held by subscribers, and issued by the Company are said to be only evidence of a right, and do not constitute the right itself; which should be created by a formal transfer on the books. This view receives apparently some support from cases where stock stands on the books of the Company in the name of one person, while another holds the certificate of it, where the Courts have held that the persons, in whose name the stock stands, are the stockholders responsible to third persons, (Rosevelt v. Brown, 1 Kern., 148; Worrall v. Judson, 5 Barb., 210; Stebbins v. Phenix Fire Ins. Co., 3 Paige, 350; Adderly v. Storm, 6 Hill, 624,) while they *209 have intimated that the person holding the certificate was not a stockholder. (Tracy v. Yates, 18 Barb., 152.) I am inclined to believe, that under the law as it stands, after the original issue of stock, any subsequent holders who are to be made liable, can only be those to whom the stock is transferred on the books, or whose names appear, as such on the index book, or register of stockholders. They are the only persons, with whom the creditors of the Company may be supposed to contract, or whom they may be presumed to trust. So long as a party leaves his name on the books as stockholder, he consents like a retiring partner in a firm who gives no notice to the world, to become responsible for future contracts. I am also disposed to believe, that the mere holder of a certificate whose name is not entered on any of the books of the Company is not a stockholder, within the clause making the latter personally responsible, otherwise two sets of stockholders would be liable instead of one. It is also true, that the provisions which make the index book or register prima facie evidence of stockholding and all transfers, except for the purpose of making the transferree liable to creditors, void; do not make the entries therein take the place of an actual transfer— but only throw the burden of proof upon the party whose name is registered; in the cases now before the Court, the entries do not show any stock to have been held by the defendants until after the contract was made which forms the subject of the action.
If the plaintiff relied solely upon the entry as evidence of the holding of the stock by the defendants, I should think the action could not be sustained because the defendants would not then be stockholders when the debt was created, being the 19th of January, 1854. If the statute is to be sustained as one limiting the liabilities of partners, and not as imposing a penalty, (Corning v. McCullough, 1 Comst., 47,) no principle of law could create a joint liability as a partner by one who was not a partner when the debt was created.
These considerations strip these cases of all collateral questions and reduce them to the single one of whether a subscriber for stock, to whom it is allotted, who pays his installments thereupon as demanded and finally receives a certificate of stock, is such a stockholder as to-be liable for debts contracted before he is *210 entered on the books as one. I do not look upon the issue of stock by the Company to subscribers as a transfer, within the meaning of the statute; the stock in fact has no existence as such until issued, and after it is issued the power of the Company to give certificates so as to create more stock is ended, (Mechanics' Bank v. New Haven Railroad Company, 3 Kern., 599; see also 17 N. Y. R., 602.) It undoubtedly was the duty of the Company to have entered the names of the original stockholders on their index book or register, but their failure to do their duty cannot deprive creditors of any right against the stockholders. But the statute itself contemplates the existence of stockholders before certificates are issued. The 6th section of the act (Laws of 1848, p. 54,) permits the Trustees to call in and demand from the “stockholders ” all sums subscribed by them under penalty of “forfeiting the shares of stock subscribed for:” the 10th section makes the “stockholders" liable until the amount of-stock shall have been paid in. This evidently presupposes the withholding of certificates of stock until the whole is paid in, and allows the shares of stock subscribed for to be forfeited whether entered in the books or not; if this were not so, it would be in the power of the Company, in other words the subscribers themselves, to relieve themselves from all liabilities to creditors while participating in the profits of the Company. Indeed, the statute does not refer to the issue of any certificates of stock at all, and a mere subscription assented to, under such circumstances makes the subscriber a stockholder (United Society v. Eagle Bank, 7 Conn., 456.) The payment of installments I do not consider material, except as showing the adoption of the subscription by the Company. The main point to be decided is, whether a party so situated as to be entitled to demand a share of profits, is not responsible for contracts until all the acts are performed which the statute prescribes as the condition for limiting their responsibility, and I think the defendants in the cases now under review were so situated; the fact of the subscription by the original defendant in the first case being made by an agent, I look upon as immaterial; that defendant paid the installments and took the certificate which show such a recognition of him by the Company as to entitle him to a share of the profits, and of course makes him liable as a stockholder.
*211 As the case has been submitted at the General Term as involving only questions of law, every intendment is to be made against the defendants as upon a demurrer to evidence and I have so considered the testimony.
The judgment must therefore be entered in conformity with the foregoing views in each of the cases for the amount of the verdict and costs, with liberty to apply for an extra allowance to be included in such costs.
Bosworth, Ch. J.
It is admitted (by a stipulation contained in the case) that E. 0. Wilcox holds a certificate of ten shares of the capital stock of this Company, dated February 6, 1854. That this stock was apportioned to Samuel H. Jordan for said Wilcox, on the 15th of April, 1853; on a subscription for capital stock originally made by Jordan for Wilcox and at his request ; the amount subscribed for, to be paid for in ten equal monthly installments.. That Wilcox paid these ten monthly installments, and made the first of such payments on the 3d of May, 1853.
It is quite clear, therefore, that Wilcox was alone interested in these shares as owner from the time the subscription was made; and as such owner he paid for them, and he holds a certificate that they are his.
I entertain no doubt that he is a stockholder within the meaning of § 32, [sec. 10,] of 2 Revised Statutes, 660, 5th edition.
The fact that the ten shares were not fully paid for on the 19th. of January, 1854, (the time when the debt in question was contracted,) does not interpose any obstacle, to his being deemed a stockholder. He had then paid nine of the ten installments; had paid it on stock apportioned to Jordan for him; which stock was so apportioned on a subscription made for him. Under § 32, [sec. 10,] (supra,)) non-payment of part of the capital stock is made a ground of liability.
He was also, within the meaning of that section, a stockholder when the debt in question was contracted. The act of 1848 (chap. 40,) section 10, declares that the stockholders shall be liable to the extent named, “ for all debts and contracts made by such Company,” until the events have occurred which by that section are to terminate the liability which it imposes.
*212 I do not accede to the proposition, that a stockholder, under that act, cannot be made liable for debts contracted before he became a stockholder. The act itself declares and defines the liabilities as well as the immunities of the stockholders.
And that in terms, makes the stockholder liable for all debts and contracts, without reference to the time when they were contracted.
And it may be added, that if the defendant is not a stockholder within the meaning of the tenth section of that act, or was not on and before the 19th of January, 1854, then it would follow that if all the subscribers to the capital stock, had subscribed for it at the instance of third persons, and although such third persons regularly paid all the installments as they matured, and were the only persons equitably or in fact interested in it, such third persons would not be liable for any debts of the Company.
There were stockholders within the meaning of that section of the act, from the time the stock was apportioned and an installment on each share had been paid. There can be no doubt that one subscribing on his own account, and accepting the apportionment made to him and who has paid his first installment, is from that time a stockholder within the meaning of section 10, of the act of 1848. (Ch. 40.)
Being of the opinion, that Wilcox is not exempt from liability as such, because he subscribed in the name of Jordan; and that as he held a certificate of stock when. the debt in question matured, and thence until after this suit was commenced, he is liable to an amount equal to the amount of such stock; I Concur in holding that judgment should be entered for the plaintiff on the verdict. The like judgment should also be entered in the suit against Peake.[1]
Ordered accordingly.

 Affirmed in the Court of Appeals, 22 N. Y. R., 551.